UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CLEMENT WHITTLE,

                                 Plaintiff,

                   - against -

COUNTY OF SULLIVAN, JOSEPH TODORA, LYNDA
LEVINE and JOSHUA POTOSEK,

                                Defendants.
-------------------------------------------------------------------x

**OPINION AND ORDER**

No. 16-CV-725 (CS)

Appearances:

Michael H. Sussman
Sussman & Associates
Goshen, New York
*Counsel for Plaintiff*

Michael Davidoff
Drew, Davidoff & Edwards Offices, LLP
Monticello, New York
*Counsel for Defendants*

Seibel, J.

     Before the Court is the motion to dismiss of Defendants County of Sullivan, Joseph Todora, Lynda Levine, and Joshua Potosek. (Doc. 23.)

**I.    BACKGROUND**

     I accept as true the facts, but not the conclusions, set forth in Plaintiff's First Amended Complaint. (Doc. 20 ("AC").)

    **A.    Facts**

     Plaintiff, who is sixty-seven years old and African-American, worked at the County of Sullivan ("County") Department of Social Services ("DSS") as a caseworker for twenty-four years. (*Id.* ¶¶ 1, 2, 8.) At all relevant times, Defendant Joseph Todora was the County's Acting

1

Commissioner of the DSS, Defendant Lynda Levine was the County's Commissioner of Personnel, and Defendant Joshua Potosek was the County Manager. (*Id.* ¶¶ 3-5.)

During his time at DSS, Plaintiff received strong performance reviews and no disciplinary notices until March 13, 2015, at which time he received a "contrived counseling memorandum." (*Id.* ¶ 8.) On the morning of May 29, 2015, Plaintiff made a verbal request to his acting supervisor, Rachel Innella, to use two hours of personal leave time at the end of that day, which she approved. (*Id.* ¶¶ 9-10.) Plaintiff alleges that Innella was authorized to, and frequently did, approve such requests. (*Id.* ¶ 11.) Sometime before 3:00 p.m., Innella's supervisor, Kathi Hitt, refused to sign a form "approving the already approved leave." (*Id.* ¶¶ 12-13.) Hitt did not tell Plaintiff that he could not go on leave or that he would be punished if he did, just that she would "dock him for the time he was taking leave." (*Id.* ¶¶ 13, 15.) Plaintiff alleges that County policy and practice did not require employees to justify a request for personal leave; it was "liberally authorized and not unreasonably denied." (*Id.* ¶ 16.)

Apparently in response to his taking the two-hour personal leave, Plaintiff was charged with insubordination. (*Id.* ¶ 18.) Plaintiff alleges that each Defendant sustained that charge, despite knowing that Plaintiff's leave had been approved, that Hitt had not ordered Plaintiff to remain in the office, and that Hitt allowed similarly situated Caucasian employees "to use personal time in such circumstances without any negative consequence." (*Id.* ¶ 19.)

On July 7, 2015, after Plaintiff's union president Sandra Shaddock informed Todora that Plaintiff had been subjected to "disparate and uncommon" treatment,[1] Plaintiff's union filed a grievance against the County and accused it of violating the collective bargaining agreement. (*Id.* ¶¶ 20-21.) Shaddock further stated, "There have been many occasion [*sic*] where people

---
[1] The AC does not allege that Shaddock suggested to Todora that Plaintiff was being subjected to disparate treatment on account of his race.

2

have left the office, leaving no one on site – and just about every employee on the second floor would attest to that. I have not been a party of any negotiation which would have made any requirement for people to be in the office – or any sort of a schedule for who is in the field." (*Id.* ¶ 22.) Levine denied the union's "Step 2" grievance on August 3, 2015. (*Id.* ¶ 23.)[2]

On August 15, 2015, the County amended its charges against Plaintiff, adding seventeen new charges. (*Id.* ¶ 24.)[3] On August 20, 2015, Potosek denied Plaintiff's "step III" grievance, finding that "the needs of the department provided a reasonable basis for the denial of the personal time [P]laintiff sought and was approved for on May 29, 2015." (*Id.* ¶ 25.) In October 2015, Plaintiff's union reiterated its demand for factual evidence substantiating Potosek's finding. (*Id.* ¶ 27.) In so doing, Shaddock wrote Potosek that "[t]he County has thus far failed to demonstrate that ALL workers were in the field as alleged. The union has witnesses to the contrary – and there should be proof in the form of case notes or mileage vouchers, etc. which would provide [*sic*] if this was the case." (*Id.* ¶ 28.) Plaintiff alleges that "[n]o such proof was ever provided" and that Defendants knew Hitt subjected him to treatment inferior to that of similarly situated white employees, (*id.* ¶ 29), although he does not state how they knew that.

"In tandem with denying" Plaintiff's grievance, Todora, with the approval of Potosek and Levine, continued to pursue disciplinary charges against Plaintiff and sought his dismissal. (*Id.* ¶ 26.) After June 2, 2015, Potosek and Todora "maintained [P]laintiff out of work." (*Id.* ¶ 30.)[4]

---

[2] Plaintiff refers to the "Step 2" grievance in his AC, (*id.*), but does not explain this term.

[3] Plaintiff alleges that the County "amended its initial section 75 charges" – presumably referring to New York Civil Service Law Section 75 – but does not articulate what the "initial section 75 charges" were. From context, I assume he is referring to the "insubordination" charge referenced in paragraphs eighteen and nineteen of the AC. Plaintiff does not describe the additional seventeen charges.

[4] It is unclear whether "maintained" means that Plaintiff had been suspended prior to June 2, 2015.

3

On November 4, 2015, the County withdrew the additional seventeen charges. (*Id.* ¶ 32.) After three days of hearings on unknown dates, "the [C]ounty's hand-picked hearing officer" sustained a single charge of insubordination against Plaintiff and recommended termination. (*Id.* ¶ 33.) On February 5, 2016, acting on behalf of the County, Todora terminated Plaintiff's employment. (*Id.* ¶ 34.) In March 2016, Plaintiff's union appealed this decision, challenging Plaintiff's termination and the County's findings of guilt regarding Plaintiff's alleged insubordination. (*Id.* ¶ 35.) Levine upheld the findings and Plaintiff's termination "in conclusory fashion" on May 24, 2016. (*Id.* ¶ 36.) Potosek later also upheld the termination. (*Id.* ¶ 37.) Both Levine and Potosek had been advised that Plaintiff's leave had been approved and that there was no factual basis for rescinding it, either because someone else from Plaintiff's unit was at the workplace while Plaintiff took his leave or because there was no requirement that someone be there. (*Id.* ¶¶ 35, 37.)

Plaintiff alleges that similarly situated Caucasian employees (1) were "permitted to take personal leave without question and without reference to supposed departmental needs," (*id.* ¶ 38); (2) did not have a second supervisor reconsider a grant of leave, (*id.* ¶ 39); and (3) were not terminated after their first disciplinary charge, (*id.* ¶ 40). Plaintiff further alleges that Defendants "ratified and condoned [Hitt's] disparate treatment of [P]laintiff and [did not] intervene[] to overrule the discipline." (*Id.* ¶ 42.)

### B. Procedural History

#### 1. *EEOC Charge*

Plaintiff submitted a claim of discrimination to the Equal Employment Opportunity Commission ("EEOC") on June 27, 2016. (*Id.* ¶ 6; Doc. 30 ("Whittle Aff.") Ex. 1.) In it, Plaintiff claimed that "there was presumptive discrimination in one or many factors." (Whittle

4

Aff. Ex. 1 at 2.) He stated that, "I am a Jamaican native of African origin 67 years old and have questioned certain practices by the Sullivan County Department of Family Services." (*Id.*) Plaintiff received a Notice of Right to Sue on November 21, 2016. (*Id.* Ex. 3 at 2.) The Notice did not specify the basis for discrimination that the EEOC investigated. (*See id.*)

        2.      *Federal Action*

Plaintiff filed this action on January 31, 2017. (Doc. 1.) On March 16, 2017, Defendants filed a letter requesting a pre-motion conference. (Doc. 17.) Plaintiff filed a response on March 20, 2017, (Doc. 19), and the parties appeared for a pre-motion conference on April 12, 2017 to discuss the instant motion, (Minute Entry dated Apr. 12, 2017). Plaintiff filed his AC on April 18, 2017, (Doc. 20), bringing claims alleging race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") against the County and under the Equal Protection Clause of the Fourteenth Amendment, enforced through 42 U.S.C. § 1983, against the individual Defendants, (*id.* ¶¶ 46-47).

Defendants filed the instant motion to dismiss on June 30, 2017. (Doc. 23.) They argue that Plaintiff failed to (1) exhaust his administrative remedies because his EEOC charge alleged discrimination on the basis of national origin, not race, (2) state a claim for disparate treatment under Title VII and the Fourteenth Amendment because he did not plausibly plead similarly situated comparators who were treated differently, and (3) allege the personal involvement of Potosek. (*See* Doc. 25 ("Ds' Mem.").) Plaintiff responds that his letter to the EEOC reporting discrimination referenced race, that he has sufficiently pleaded similarly situated Caucasian comparators who engaged in similar behavior and were not treated as harshly, and that he has properly pleaded Potosek's personal involvement. (*See* Doc. 29 ("P's Opp.").)

5

## II. DISCUSSION

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

**B.      Documents Properly Considered**

When deciding a motion to dismiss, a court is entitled to consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).  To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).  "A document is integral to the complaint where the complaint relies heavily upon its terms and effect.  Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (citation and internal quotation marks omitted).

Both Plaintiff and Defendants have attached documents to their motion papers.  Plaintiff attached three exhibits:  (1) his letter to the EEOC reporting discrimination dated June 27, 2016, (2) a letter from the EEOC to Plaintiff dated October 27, 2016, and (3) a letter from the EEOC to Plaintiff dated November 21, 2016 with the accompanying Notice of Right to Sue of the same date.  (Whittle Aff. Exs. 1-3.)  Defendants attached seven exhibits to the affidavit of their counsel, (Doc. 24 ("Davidoff Aff.")):  (1) Plaintiff's Amended Complaint, (*id.* Ex. A), (2) a Notice of Charge of Discrimination sent to the Sullivan County Department of Family Services, dated October 21, 2016, (*id.* Ex. B), (3) the Notice of Right to Sue, (*id.* Ex. C), (4) the Civil Service Law Section 75 Notice and Statement of Charges sent to Plaintiff, dated June 2, 2015,

(*id.* Ex. D), (5) the hearing officer's findings and recommendations, dated February 5, 2016, following the Civil Service Law Section 75 hearing, (*id.* Ex. E), (6) a letter from Todora to Plaintiff regarding the hearing officer's determination, dated February 5, 2016, (*id.* Ex. F), and (7) Plaintiff's notice of determination by a personnel officer on appeal filed pursuant to Section 76 of the Civil Service law, dated May 24, 2016, (*id.* Ex. G).

I may consider Plaintiff's June 27, 2016 letter to the EEOC reporting discrimination, (Whittle Aff. Ex. 1), and the Notice of Right to Sue, (*id.* Ex. 3 at 2; Davidoff Aff. Ex. C), because they are incorporated into the AC by reference. (*See* AC ¶ 6.) I may not consider the remaining documents, (Whittle Aff. Ex. 2; *id.* Ex. 3 at 1; Davidoff Aff. Exs. B, D-G), as none are integral to the AC, nor are they referenced therein. Specifically, the October 21, 2016 notice of charge of discrimination sent to the County, (Davidoff Aff. Ex. B), is not referenced in the AC and Plaintiff claims he did not receive it, (P's Opp. at 3). *See Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 284 (S.D.N.Y. 2015) (declining to consider documents of which there was no evidence that Plaintiff had notice). That it is the only form the County received does not make it appropriate for consideration on a motion to dismiss. Moreover, while the AC mentions the amended Section 75 charges in which the County added seventeen charges, (*id.* ¶ 24), it does not incorporate by reference the original Section 75 charge, which is seemingly what is attached as Exhibit D to the Davidoff Affidavit. Similarly, Plaintiff references general decisions to sustain a charge of insubordination in his AC, (*id.* ¶¶ 33, 36), but he does not make reference to the specific documents attached as Exhibits E through G to the Davidoff Affidavit. Even if Plaintiff's references to these documents were more explicit, "[m]erely mentioning a document in the complaint" is not enough to consider them on a motion to dismiss. *Goel*, 820 F.3d at 559.

## C. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies because Plaintiff's EEOC charge did not allege discrimination on the basis of race, only national origin. (Ds' Mem. at 7-9.) Plaintiff responds that he properly referenced race discrimination because his letter to the EEOC stated that he is "a Jamaican native of African origin." (P's Opp. at 3-4; Whittle Aff. Ex. 1 at 2.) Moreover, Plaintiff claims that the document on which Defendants base their argument – the notice of charge of discrimination sent by the EEOC to the County – was never sent to him and that the EEOC's formulation of Plaintiff's complaint was incorrect. (P's Opp. at 3.) Defendants argue in their reply brief that there is "no assertion in [Plaintiff's] letter, either directly or indirectly, of any claim of race discrimination." (Doc. 27 at 1.)

Before a plaintiff may bring a suit in federal court, he must exhaust his administrative remedies by filing his claims with the EEOC or a similar state agency. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010). "Claims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).

A common sense reading of Plaintiff's letter to the EEOC suggests that Plaintiff was referring to both his national origin *and* race. In that letter, Plaintiff stated that he is "a Jamaican native of African origin." (Whittle Aff. Ex. 1 at 2.) Plaintiff seemingly first refers to his national origin by stating that he is a "Jamaican native," and then to his race when he states that he is of "African origin." While this phraseology could be interpreted to mean that Plaintiff was referring to two national origins – Jamaican and African – the more logical reading is that Plaintiff was born in Jamaica but his ancestors were African, referring to his race.

9

Even if the letter was not referring to Plaintiff's race, his race discrimination claim is reasonably related to his national origin discrimination claim.

> A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. In this inquiry, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving. The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases. The "reasonably related" exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering.

*Williams*, 458 F.3d at 70 (alterations, citations, and internal quotation marks omitted); *see Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 378 (W.D.N.Y. 2010) (claim is reasonably related when it would fall "within the reasonably expected scope of an EEOC investigation of the charges of discrimination") (internal quotation marks omitted).

Defendants point to *Williams v. City of New York*, No. 04-CV-1993, 2005 WL 839103, at *8 (S.D.N.Y. Apr. 12, 2005), which precluded a claim for race discrimination where the plaintiff only raised the issue of gender discrimination with the EEOC. (Ds' Mem. at 8-9.) But there is no relationship between gender and race, while there may be and often is between national origin and race.

> [B]ecause racial categories may overlap significantly with nationality or ethnicity, the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible, or at least sufficiently blurred so that courts may infer that both types of discrimination would fall within the reasonable scope of the ensuing EEOC investigation for exhaustion purposes.

*Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003) (citation and internal quotation marks omitted). Thus, "[c]ourts have held that claims of race discrimination would fall within the scope of the EEOC's investigation of a claim of national origin discrimination in an EEOC

charge." *Sharabura v. Taylor*, No. 03-CV-1866, 2003 WL 22170601, at *3 (E.D.N.Y. Sept. 16, 2003).

For example, in *Dixit v. City of New York Department of General Services*, 972 F. Supp. 730 (S.D.N.Y. 1997), the Court held that the plaintiff's assertion that she was "Asian Indian" could be considered "a characterization of both race and national origin, since it denotes someone with Asian racial characteristics whose ethnic background is Indian." *Id.* at 735. Similarly here, even if Plaintiff's reference to his "African origin" was meant to connote only his national origin, Plaintiff's race – African-American, (AC ¶ 1) – is "correlated with [his] national origin because of certain historical or demographic facts." *Dennis v. Pan Am. World Airways, Inc.*, 746 F. Supp. 288, 291 (E.D.N.Y. 1990). Thus, by referencing his "African origin," the EEOC would have received "adequate notice to investigate discrimination" both on the basis of national origin and race. *Deravin*, 335 F.3d at 202.[5] Plaintiff has therefore exhausted his administrative remedies.

### D. Similarly Situated Comparators

Defendants next argue that even if Plaintiff has exhausted his administrative remedies, he has failed to point to similarly situated comparators necessary to raise an inference of discrimination for his Title VII and Equal Protection claims. (Ds' Mem. at 10-14.)

"[I]n an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin

---

[5] Even if I could consider the notice of charge of discrimination the EEOC sent to the County, which checks the boxes only for discrimination on the basis of national origin and age, it would not change my conclusion. Courts have found a race claim to be reasonably related even where the plaintiff, in a form sent to the EEOC, explicitly checked the box for national origin but not race. *See, e.g.*, *Dixit*, 972 F. Supp. at 734-35. Here the EEOC, not Plaintiff, prepared the charge of discrimination sent to the County. That the EEOC employee who completed the form may have perceived the claim to be one for national origin does not mean that exploration of race would not reasonably be expected to arise from reference to African origin as well as Jamaican nationality. Defendants have pointed to no authority for the proposition that an EEOC employee's understanding of a submitted claim is dispositive on the issue of whether the claims are reasonably related.

was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). "[H]e need only plausibly allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 86-87 (internal quotation marks omitted). There is no dispute that Plaintiff's termination is an adverse action.[6]

Plaintiff can raise an inference of discrimination "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). "At the pleading stage, allegations that the plaintiff and comparators worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment may be sufficient to raise an inference of discrimination." *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016). While a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation," *Littlejohn v. City of N.Y.*, 795 F.3d 297 (2d Cir. 2015), "a Title VII plaintiff must still identify at least one comparator to support a minimal inference of discrimination; otherwise the motion to dismiss stage would be too easy to bypass," *Goodine v. Suffolk Cty. Water Auth.*, No. 14-CV-4514, 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017). Identification of a "generic class of [similarly situated] white . . . employees" that allegedly received better treatment" is "insufficient even at the pleadings stage." *Id.*; *see Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) ("Without factual amplification, the generic allegation of disparate treatment related to an unspecified class of

---

[6] Denial of two hours of personal leave does not amount to an adverse employment action. *See Allen v. A.R.E.B.A. Casriel, Inc.*, No. 15-CV-9965, 2017 WL 4046127, at *13 (S.D.N.Y. Sept. 12, 2017); *Todoverto v. McDonald*, No. 13-CV-4922, 2016 WL 3826281, at *12 (S.D.N.Y. July 7, 2016).

Caucasian persons is simply not sufficient to 'nudge . . . claims across the line from conceivable to plausible,' and thus is insufficient to support [a] racial discrimination claim.") (quoting *Twombly*, 550 U.S. at 570); *Yan v. Ziba Mode Inc.*, No. 15-CV-47, 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (no inference of discrimination where plaintiff "fail[ed] to plead any facts regarding how the[] employees' identities, experience levels, and conduct compared to Plaintiff's"); *T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11-CV-5133, 2012 WL 860367, at *6 (S.D.N.Y. Feb. 27, 2012) ("[T]o withstand a motion to dismiss, a plaintiff must allege specific examples of others similarly situated who were treated more favorably.").

Plaintiff has not provided sufficient information about his own situation or that of his comparators. Plaintiff alleges that on May 29, 2015, his request for leave was approved by one supervisor and then he was told by the next-level supervisor that she did not approve and that he would be docked for the time. But he provides little detail about the insubordination charges themselves, the purpose of the "counseling memorandum" he received on March 13, 2015 or how it related to his firing, or his disciplinary history.

Likewise, although Plaintiff in his brief points to nine paragraphs in which he purports to identify similarly situated comparators who were treated differently than he was, (P's Opp. at 5-7 (citing AC ¶¶ 14, 17, 19, 22, 27-29, 35, 38)), none of these paragraphs provide sufficient facts to render his conclusions plausible. Taken as a whole, these paragraphs allege that similarly situated Caucasian employees (1) were "permitted to take personal leave without question and without reference to supposed department needs," (*id.* ¶ 38; *see id.* ¶¶ 14, 18, 19); (2) were not required to receive a second supervisor's approval to take personal leave, (*id.* ¶ 39); and (3) were not terminated after their first disciplinary charge, (*id.* ¶ 40; *see id.* ¶ 29). The first two categories do not relate to the relevant adverse employment action and while the third category is

13

relevant, nowhere in the AC does Plaintiff provide details regarding these alleged similarly situated Caucasian employees, "*e.g.*, who they are, what their positions or responsibilities were at [the County], how their conduct compared to [P]laintiffs' or how they were treated differently by defendants." *Blige v. City Univ. of N.Y.*, No. 15-CV-8873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) (internal quotation marks omitted), *adopted by*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017)); *see Dixon v. Office of N.Y.S. Comptroller*, No. 16-CV-1184, 2017 WL 4357461, at *10 (N.D.N.Y. Sept. 29, 2017) (allegations that plaintiff was treated less favorably than other Caucasian employees insufficient to raise inference of discrimination on motion to dismiss).

Specifically, Plaintiff fails to provide facts as to which colleagues committed similar acts but were not fired, what those acts were, to whom those employees reported, what their responsibilities were, and how their disciplinary histories compared to his. "Such allegations are necessary to render plausible the inference that Plaintiff's [race], rather than any number of other considerations, played a role" in Plaintiff's termination. *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (requiring information regarding plaintiff's colleagues' departments, job responsibilities and supervisors). Without such facts, and without any other evidence of discriminatory intent (such as racially-charged remarks), Plaintiff has not raised even a minimal inference that the employer was motivated by racial animus.

Plaintiff argues in his brief that the AC refers to "white employees who held the same position as he did in the same unit under Hitt and were subject to the same rules and policies as he was," and that "Hitt was denying [P]laintiff's previously approved leave on a ground which she had not previously invoked and which was never the subject of any negotiation." (P's Opp. at 6.) Not only are none of these facts pleaded in the AC,[7] but they relate to the denial of leave,

---

[7] Plaintiff may not amend his AC in an opposition brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

14

not the termination. Plaintiff states in conclusory fashion that all "defendants . . . treated [P]laintiff differently than similarly situated white employees who had spotless records for several decades and were not terminated upon their first disciplinary charge," (AC ¶ 40), but provides no facts about any such other employees that would render that conclusion plausible. Plaintiff's decision to omit specifics means that he cannot plausibly allege "a reasonably close resemblance of the facts and circumstances" or "an objectively identifiable basis for comparability," *Graham*, 230 F.3d at 40 (internal quotation marks omitted), with his alleged similarly situated comparators.

Plaintiff has not alleged enough facts to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, Plaintiff's claims under Title VII and the Equal Protection Clause for disparate treatment are dismissed. As further discussed below, however, because I am granting Plaintiff one final opportunity to amend his claims, I will briefly address the issue of whether Plaintiff has pleaded Potosek's personal involvement.

### E. Potosek's Personal Involvement

Defendants argue that Plaintiff fails to allege the personal involvement of Potosek as required by § 1983. (Ds' Mem. at 15-17.) "[A] tangible connection between the acts of a defendant and the injuries suffered" must be alleged by a plaintiff asserting a Section 1983 claim. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Therefore, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (internal quotation marks omitted).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation,

> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

After *Iqbal*, however, courts within this Circuit have split into two camps, some holding that all five *Colon* categories can still suffice to hold an individual liable for a constitutional deprivation under § 1983 under a supervisory theory, depending on the underlying constitutional claim, and others holding that only the first and part of the third categories meet the plausibility standard. *Compare, e.g.*, *Delgado v. Bezio*, No. 09-CV-6899, 2011WL 1842294, at *9 (S.D.N.Y. May 9, 2011) (holding that "where the claim does not require a showing of discriminatory intent, the *Colon* analysis should still apply, insofar as it is consistent with the particular constitutional provision alleged to have been violated") (internal quotation marks omitted), *and Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply."), *with Bellamy v. Mt. Vernon Hosp.*, No. 07-CV-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster – a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."), *and Young v. State of N.Y. Office of Mental Retardation & Developmental Disabilities*, 649 F. Supp.

2d 282, 294 (S.D.N.Y. 2009) (same). I need not delve into this issue in light of my disposition below.

Plaintiff argues that Potosek was the final decision-maker and points to several paragraphs in which Potosek is implicated. (P's Opp. at 8-10.) While "final decision-maker" is not one of the *Colon* categories, Plaintiff has provided sufficient facts plausibly alleging Potosek's personal involvement. The AC alleges that: (1) "Potosek[] was the County Manager and terminated [P]laintiff's employment," (*id.* ¶ 5); (2) "Potosek ignored the . . . information provided by the union . . . and denied its step III grievance," (*id.* ¶ 25); (3) Shaddock wrote Potosek regarding Plaintiff's insubordination charges, (*id.* ¶ 28); (4) "Potosek and Todora maintained [P]laintiff out of work," (*id.* ¶ 30); and (5) Potosek upheld Plaintiff's termination, (*id.* ¶ 37). While Shaddock's communication *to* Potosek does not speak to any action by Potosek, and while the denial of the union grievance did not result in Plaintiff's termination, the first, fourth, and fifth allegations indicate that Potosek played some direct role in sustaining Plaintiff's insubordination charge and approving his termination, satisfying the first *Colon* theory. *See Brooking v. N.Y.S. Dep't of Taxation & Fin.*, No. 15-CV-510, 2016 WL 3661409, at *14 (N.D.N.Y. July 5, 2016) (personal involvement plausibly alleged where individual defendant "was involved in the decision to terminate the plaintiff").[8]

## III. LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to

---

[8] If Plaintiff amends and that complaint survives a motion to dismiss, but discovery reveals that Potosek's "termination" of Plaintiff was a "rubber stamp" of a subordinate's decision, or that Potosek was not involved in Plaintiff's termination at all, as Defendants suggest, (Doc. 27 at 7), and as documents I cannot yet consider seem to indicate, (Davidoff Aff. Exs. F-G), Potosek will be dismissed. *See Scott v. Frederick*, No. 13-CV-605, 2015 WL 127864, at *17 (N.D.N.Y. Jan. 8, 2015) ("the mere rubber-stamping of a disciplinary determination is insufficient to plausibly allege personal involvement"); *Brown v. Brun*, No. 10-CV-397, 2010 WL 5072125, at *2 (W.D.N.Y. Dec. 7, 2010) (same) (collecting cases).

amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, (Doc. 20), after having the benefit of a pre-motion letter from Defendants outlining their proposed grounds for dismissal, (Doc. 17), and my observations during the April 12, 2017 conference. Plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend *sua sponte*. *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at \*5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*.").

Further, Plaintiff has not asked to amend again or provided facts that would cure the deficiencies outlined in this Opinion and Order. But where, as here, some of a complaint's "defects are potentially curable," *Zucker v. Five Towns Coll*., No. 09-CV-4884, 2010 WL 3310698, at *3 (E.D.N.Y. Aug. 18, 2010), a court may exercise its discretion to grant leave to amend, *McCarthy*, 482 F.3d at 200. Although I need not, I will do so here. I caution Plaintiff that any Second Amended Complaint should contain more factual detail concerning the similarly situated Caucasian employees who were allegedly treated better than Plaintiff, including information regarding their positions, supervision and disciplinary history, and the circumstances surrounding their terminations. Plaintiff must also clarify the facts regarding his own discipline and termination so that the Court may determine if comparison of Plaintiff's situation to that of potential similarly situated employees gives rise to a minimal inference of discrimination.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion. (Doc. 23.) Plaintiff has leave to replead to include facts rendering his disparate treatment theory plausible. The case will be closed if no Second Amended Complaint is submitted by November 22, 2017.

**SO ORDERED.**

Dated: November 8, 2017
      White Plains, New York

                                                    *Cathy Seibel*
                                          CATHY SEIBEL, U.S.D.J.